IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BERNARD C MCGEE,

     Petitioner,

v.                                                                          CASE NO. 4:08-cv-411-RH-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's

Leon County jury-trial conviction for armed robbery, for which he received a 40-year

sentence with a 10-year minimum mandatory term of imprisonment as a habitual

offender.  Respondent filed a response and appendix with relevant portions of the state-

court record, and Petitioner filed a reply.  Docs. 18, 22.  Upon due consideration of the

Petition, the Response, the Reply, and the state-court record, the undersigned

recommends that the Petition be denied.[1]

## State-Court Proceedings

Petitioner was charged by information with home invasion robbery and

possession of a firearm by a convicted felon.  Prior to trial, Petitioner's appointed

counsel, Frank Sheffield, filed a motion to suppress a firearm and clothing that were

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

seized during a search of the home of Petitioner's mother at 2838 McArthur Street.   The

trial court conducted an evidentiary hearing and heard testimony from Petitioner's

mother, Betty McGee, his brother, Randall Roebuck, and law enforcement personnel.

Following the hearing, the court denied the motion to suppress on the grounds that

Randall Roebuck gave valid verbal consent to the search and Petitioner lacked standing

to challenge the search and seizure because he did not live in the home.   Respondent's

Appendix Exhibit ("App. Exh.") D.

The evidence adduced at trial (App. Exh. C) may be summarized as follows.

Shamar Thomas testified that he was in his apartment with his brother, Dmico Thomas,

and cousin, Carlos Baker, when a man identified as Sebra Rollins came to the door

asking to buy marijuana.  Petitioner and Jesse Harden were with Rollins; Harden waited

outside of the apartment while Rollins and Petitioner entered.  Shamar Thomas knew

Harden but did not know Rollins or Petitioner.  Shamar Thomas testified that Petitioner

held a gun to his head and said "you know what time it is," which Shamar Thomas

understood to mean Petitioner was robbing him.  Rollins pulled a gun on Dmico Thomas.

Carlos Baker left the apartment.  Rollins and Petitioner took money and other items from

the apartment.  Shamar Thomas identified Rollins and Petitioner in open court.

Dmico Thomas testified that Harden came to the door first, and then Rollins and

Petitioner entered.  Dmico Thomas was going to the bathroom when Rollins tapped him

on the back of the head saying "you know what time it is, get down."  Dmico Thomas

turned and saw Rollins holding a gun.  He did not see whether Petitioner held a gun on

Shamar Thomas.  The prosecutor showed Dmico Thomas a gun, and Thomas testified

that it appeared similar to the one Petitioner used.  Dmico Thomas identified Rollins in

open court, but was less certain of his identification of Petitioner.

Carlos Baker testified that Rollins, Harden, and Petitioner came to Shamar Thomas's apartment. Baker was acquainted with Rollins and Harden, but he did not know Petitioner. Rollins and Petitioner were talking to the other men while Baker talked to Harden. Harden and Baker stepped outside the apartment, and then Baker "heard a gun," turned around and saw Rollins with a gun, and fled. Baker testified that he was positive Petitioner was there because he saw both Rollins' and Petitioner's faces. Rollins was wearing a camouflage jacket.

Tallahassee Police Department Officers Kevin Taylor and Joanna Baldwin responded to the call from Thomas's apartment following the robbery and obtained descriptions of the perpetrators. Two of the men were described as wearing camouflage or Army jackets.

Investigator Michael Suleski testified that the Thomas brothers and Baker were shown photo lineups, from which Rollins and Harden were identified as suspects. Harden subsequently showed Suleski where he believed Petitioner lived, 2838 McArthur Street. Suleski found Petitioner at that address, sitting on the porch with Randall Roebuck. Suleski's search of the home revealed camouflage clothing and a firearm. Over Mr. Sheffield's objection that the clothing and firearm had not been connected to Petitioner, the items were admitted into evidence. On cross-examination, Mr. Sheffield elicited Suleski's testimony that no forensic evidence linked the seized items to Petitioner.

Leon County Sheriff's Office Detective Todd Lombardo testified that Baker and the Thomas brothers identified Petitioner in a photo lineup.

At the close of the state's case-in-chief, Mr. Sheffield moved for a directed verdict on the ground that the evidence did not establish the elements of home invasion robbery because there was no evidence that Petitioner intended to commit a robbery at the time he entered the apartment.  Mr. Sheffield stated "[n]ow, [the prosecutor] can go to a jury on some of the lesser includeds, you know, robbery with a weapon or robbery.  But, home invasion robbery requires a specific showing of intent upon entry and we don't have that."  The court denied the motion.

Rollins' counsel advised the court that Rollins would not testify.  Mr. Sheffield advised the court that he had subpoenaed alibi witnesses for Petitioner, and had discussed with Petitioner whether he should testify.  Mr. Sheffield stated that he advised Petitioner not to testify or call the alibi witnesses.

The court announced that it would conduct a "3.850 inquiry" with the defendants. The court engaged in a lengthy colloquy with Rollins and Petitioner, during which the court explained to the defendants that they had the right to testify regardless of counsels' advice.  The court advised the defendants as to their right not to testify and what questions could be asked of them if they chose to testify.  The court specifically inquired of Petitioner whether everything his counsel had done at trial met with his approval, and Petitioner said yes.  The court inquired whether there was any strategy counsel used that Petitioner objected to, whether there were any alibi witnesses that Petitioner wanted counsel to investigate whom he failed or refused to investigate or call, and whether there were any other defense witnesses that counsel failed to refuse or investigate.   Petitioner responded "no" to each of these questions, and affirmed that he understood the decision whether to testify was his own.  The court specifically explained

to Petitioner that under the current Florida procedural rules if his attorney did not present any witnesses (other than Petitioner) then he would retain the right to present closing argument before and after the state's argument.   Petitioner expressed on the record that he understood all of these rights

On direct examination, Petitioner testified that he did not commit a home invasion robbery against the victims, that he did not live at 2838 McArthur Street, and that he previously had been convicted of five crimes.  The state called Harden as a rebuttal witness, and Harden identified Petitioner as one of the men that he took to Thomas's apartment on the night of the robbery.  The court denied Mr. Sheffield's renewed motion for judgment of acquittal.  The jury convicted Petitioner and Rollins of the lesser included offense of robbery with a firearm, and found that both defendants actually possessed a firearm.

On direct appeal, Petitioner's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal.  *Id*. Exh. F.   Petitioner filed a brief raising as the sole issue whether the trial court erred in denying the motion to suppress.  *Id*. Exh. G.  The First DCA affirmed *per curiam* without written opinion.  *Id*. Exh. I.

Petitioner sought postconviction relief, including filing a petition for a writ of habeas corpus alleging ineffective assistance of appellate counsel because counsel failed to obtain a transcript of the *voir dire* during which two jurors stated they had been victims of crimes and made statements that Petitioner alleged showed bias, and that counsel failed to argue on appeal that the trial court erred in denying his motion for judgment of acquittal.  *Id*. Exh. K.  The First DCA denied the petition on the merits

without written opinion.  *Id*. Exh. L.

Petitioner then filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting five ineffective-assistance claims.  *Id*. Exh. M.  Assessing Petitioner's claims under *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court summarily denied relief on four grounds.  As to Petitioner's first claim that his trial counsel was ineffective for failing to investigate whether the clothes seized from his mother's house were Petitioner's size –  and for not having Petitioner "model" the clothing for the jury to show that it did not fit –  the court found that the trial evidence suggested that the clothing could have belonged to Petitioner, his co-defendant, or some third party, but Mr. Sheffield established for the jury that there was no forensic evidence linking Petitioner to the clothing.  The court concluded that Petitioner could not show a reasonable probability that he would have been acquitted had he modeled the clothing.

For his second claim, Petitioner argued that his counsel failed to call four alibi witnesses.  The court rejected this claim as "conclusively refuted by the record," because counsel subpoenaed alibi witnesses and recommended that they not be called to testify. Petitioner accepted that advice, and then represented to the court the he agreed with his counsel's strategy.

 In his third claim, Petitioner argued that his counsel was ineffective for failing to move to sever his trial from Rollins'.  The court rejected this claim because  the testimony concerning Rollins' confession to the police did not implicate Petitioner, Rollins did not testify at trial, and "great care" was taken by defense counsel to avoid any *Bruton* problem.  The court concluded that Petitioner therefore could not establish *Strickland* prejudice.

For his fifth claim, Petitioner argued that his counsel was ineffective for failing to cross-examine Jesse Harden.  The court concluded that Petitioner failed to establish prejudice because counsel adequately argued to the jury that Harden was not a credible witness, and Petitioner did not show how cross-examination would have changed the outcome of the trial.  *Id*. Exh. M.

The court ordered an evidentiary hearing on Petitioner's fourth claim, in which Petitioner asserted that Mr. Sheffield was ineffective for failing to bring to the court's attention that one of the jurors was sleeping during the trial.  At the hearing, Mr. Sheffield testified that he never saw any jurors sleeping during Petitioner's trial, and Petitioner never told him that one of the jurors was sleeping.  Petitioner was afforded the opportunity to cross-examine Mr. Sheffield and Petitioner stated under oath that he saw the jury foreman closing his eyes during Dmico Thomas's testimony, and when he told Sheffield to look at the juror Sheffield stated that "he would handle it."  Under further examination by the court, Mr. Sheffield reiterated that "[t]here was nobody that slept through the evidence, and he never brought it to my attention."  *Id*.

The juror in question, Clifton Folsom, testified that he did not sleep during Petitioner's trial.  He did not remember resting his eyes or dropping his head, but he may have looked down at his pad as he was making notes.  *Id*.

Petitioner called Tanesha McGee as a witness.  She testified that "I did recall someone, like, nodding off, but I can't – I don't think it was him, but it was someone.  I don't know. . . . someone was nodding off, and it was the guy that was sitting at the far end."  *Id*.

Based on this evidence, the trial court found that Folsom was a credible, truthful

witness.  The court noted that one of her jobs as a trial judge was to watch the jurors and notice if someone was losing attention.  The court concluded that Petitioner failed to meet his burden of showing that any juror was asleep during the trial.  *Id*.  The First DCA affirmed *per curiam* without opinion.  *Id*. Exh. N.

The instant habeas petition followed.  Petitioner asserts the same claims raised in his postconviction motions in the state court, with the added claim that the trial court improperly became an "active participant" during the trial proceedings in conducting a *sua sponte* "Rule 3.850" inquiry.  Petitioner asserts that the information adduced during the trial court's colloquy cannot be used as evidence against him to refute his postconviction claims.  The Respondent concedes that the Petition is timely and that all of Petitioner's claims are exhausted, with the exception of this latter claim, which Respondent contends was never presented to the state courts and which is now foreclosed from federal review.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v.*

*Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on the scope of this Court's review. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

### Ineffective Assistance of Counsel

Because Petitioner's remaining claims raise the issue of counsel's effectiveness, a review of  *Strickland* is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect

application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."   *Id*.  at 788.   When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## Claim (1) Denial of Motion to Suppress

Petitioner contends that the trial court's denial of his motion to suppress the

evidence seized from his mother's house deprived him of his Fourth Amendment rights.

Doc. 1.  Respondent contends Petitioner's claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976), because Petitioner had a full and fair opportunity to litigate the Fourth Amendment issue in state court.

Upon review of the record, the undersigned concludes that Petitioner's Fourth Amendment claim was given a full and fair hearing in the state courts. Petitioner's counsel initially raised the claim in the trial court in a motion to suppress.  As summarized above, an evidentiary hearing was held at which Petitioner's counsel presented testimony from two witnesses and the prosecutor presented testimony from law enforcement witnesses.   Petitioner appealed the trial court's denial of the motion to suppress to the First DCA.   As a result, under *Stone v. Powell* this court lacks authority to review his Fourth Amendment claim. *See Devier v. Zant*, 3 F.3d 1445, 1455 (11th Cir.1993) (federal habeas court lacked authority to review Fourth Amendment claims where claims were given full and fair hearing in state courts, as they were raised initially in motion to suppress and reviewed on appeal); *Harris v. Dugger*, 874 F.2d 756, 761 (11th Cir.1989).

### *Claims (2) & (3) Ineffective Assistance of Appellate Counsel*

Petitioner raises two claims regarding his appellate counsel.  In his first claim, Petitioner contends that his appointed appellate counsel rendered ineffective assistance by failing to obtain a transcript of the *voir dire* proceedings, and he was prejudiced by counsel's failure because the record would have established that two jurors should have been struck for cause.  In his state habeas petition to the First DCA raising this claim, Petitioner argued that Jurors Clifton Folsom and Daniel Hooker stated during *voir dire*

that they had been victims of armed robbery, and that both jurors stated they had a

"favorable impression" of the police investigation.  Petitioner stated that the trial court

asked the jurors whether their experiences would bias or prejudice them, and both

responded that "I'd try not to."  Petitioner alleged that both men stated that if they had a

bias "it would be against the Defendant."  Upon further questioning by the court as to

whether they could consider the case solely on the evidence, Folsom said "I would give

it my best shot," and Hooker said "I would try to do my best."  Petitioner alleged that his

counsel challenged both jurors for cause, and the trial court denied the request.

Petitioner alleged that his counsel exhausted his peremptory challenges and requested

another challenge, citing Jurors Folsom and Hooker, but the trial court denied the

request.  App. Exh. K.  The First DCA summarily denied this claim on the merits without

directing a response to Petitioner's habeas petition.  *Id*. Exh. L.

     To prevail on this claim, Petitioner must first show that appellate counsel was

objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S.

259, 285-86 (2000).  The exercise of judgment involved in framing an appeal makes it

"difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for

omitting a particular argument.  *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800

F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger

than those presented, will the presumption of effective assistance of counsel be

overcome")).  To demonstrate prejudice, Petitioner must establish a reasonable

probability that, but for appellate counsel's alleged error, he would have prevailed on

appeal. *Id*. at 286. Petitioner must satisfy both prongs of the *Strickland* test in order to

prevail on his claim of ineffective assistance of appellate counsel.  *Id.* at 289.

Respondent states that the *voir dire* proceedings in this case have never been transcribed.  The record reflects that Petitioner's appointed appellate counsel did not request that the *voir dire*, which was conducted on November 8, 2004, be transcribed for appeal; counsel specifically requested transcripts of the October 15, 2004, suppression hearing, the trial on November 9-10, 2004, and the sentencing on December 7, 2004.  App. Exh. B on 123.  Petitioner points to nothing in the record showing that he himself requested that the *voir dire* proceedings be transcribed in order to present this claim on state habeas review.  Petitioner's claims in the instant Petition are apparently based on Petitioner's recollection of the proceeding or his own notes.

Although the First DCA denied the petition without written opinion, it is clear that it rejected the claim on its merits.  *See* App. Exh. L.  The Eleventh Circuit has held that a summary disposition on the merits is entitled to the same deference as if the state court had entered written findings to support its decision.  *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("[A]ll that is required is a rejection of the claim on the merits, not an explanation," to trigger deferential standard of review under 28 U.S.C § 2254(d)(1)).   It is reasonable to infer that the First DCA determined that Petitioner's claim could be resolved on the merits without the benefit of a transcript of the *voir dire*.

The allegations of Petitioner's state habeas petition, as in the instant federal petition, reflect that the trial court engaged in a colloquy with Jurors Folsom and Hooker, which culminated in the jurors' representation that they would do their "best" to consider Petitioner's case solely on the basis of the evidence, putting aside their personal experiences.  According to Petitioner, the trial court relied on the jurors' responses in denying counsel's efforts to strike the jurors.  *See* Doc. 1; App. Exh. K.

The Constitution guarantees all criminal defendants an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 726 (1992).   In determining whether a juror is impartial, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."   *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).  The issue is: "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed[?]"   *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

In this case, the allegations of the Petition reflect that the trial court obtained the jurors affirmations that they would do their best to consider Petitioner's case on the basis of the evidence, and not on the basis of their personal experience.  The trial court's determination that the jurors could be impartial is a determination of fact that is presumed correct absent clear and convincing evidence to the contrary; "[t]he constitutional requirement for an impartial jury requires no more."   *Brown v. Dept. of Corr.*, 348 Fed. Appx. 526 (11th Cir. 2009) (finding no constitutional violation where juror initially stated he could not give a "direct answer" as to whether he could put personal experience aside; but then trial court obtained affirmation that juror could listen to the evidence and put aside his experience).[2]

On the basis of this record, Petitioner has failed to establish a reasonable probability that, but for appellate counsel's alleged error, he would have prevailed on appeal with a juror-bias claim.  The Court cannot conclude that the First DCA's rejection

---

[2] It is, of course, Petitioner's burden to rebut the presumption afforded to the state court's determination of a factual issue by presenting clear and convincing evidence to the contrary.  28 U.S.C § 2254(e)(1).

of this claim on the merits was contrary to, or an unreasonable application of, federal

law, or an unreasonable determination of the facts.

Petitioner also contends that his appellate counsel rendered ineffective

assistance for failing to argue on appeal that the trial court erred in denying his motion

for judgment of acquittal.  Upon review of the trial record, it is clear that Petitioner cannot

prevail on this claim.   When reviewing a claim of the sufficiency of the evidence on

federal habeas review, this Court is required to view the evidence in the light most

favorable to the prosecution and determine whether any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.   *Jackson v.

Virginia*, 443 U.S. 307, 319 (1979).  While the jury apparently concluded that there was

not sufficient evidence to find Petitioner guilty of home invasion robbery, the evidence

was plainly sufficient to create an issue for the jury as to Petitioner's guilt of the lesser

included offenses.  On the basis of this record, Petitioner has failed to establish a

reasonable probability that, but for appellate counsel's alleged error, he would have

prevailed on appeal with this claim.  The Court cannot conclude that the First DCA's

rejection of this claim on the merits was contrary to, or an unreasonable application of,

federal law, or an unreasonable determination of the facts.

### Claim (4) Trial Counsel's Failure to Conduct Pretrial Investigation

Petitioner conclusionally alleges that his trial counsel failed to conduct a

reasonable pretrial investigation by interviewing potential witnesses.  Doc. 1.  Petitioner

provides no explanation of what additional investigation his counsel should have

performed, or how he was prejudiced by any such failure.  Petitioner's vague and

conclusional allegations are insufficient to support a claim for habeas corpus relief.  *See*

*Strickland*, 466 U.S. at 687-94.

Within this claim, Petitioner contends that the trial court erred by relying on the court's "Rule 3.850 inquiry" and Petitioner's statements to reject Petitioner's ineffective-assistance claim.  The Court agrees with Respondent that Petitioner never exhausted this claim in the state courts, and it is now procedurally barred and foreclosed from federal review.  In any event, Petitioner points to no authority that supports the proposition that a trial court violates a defendant's federal constitutional rights by engaging in a colloquy, out of the presence of the jury, to apprise the defendant of his rights regarding testimony and witnesses, and to ascertain whether the defendant has fully explored such matters with his counsel.  Under the circumstances presented, the trial court's colloquy presents no basis for federal habeas review.

### Claim (5) Failure to Investigate and Present Exculpatory Witnesses

Petitioner contends that his trial counsel rendered ineffective assistance with respect to four alibi witnesses: his brothers Benny and Randall Roebuck, his sister Tinesha McGee, and his mother, Betty McGee.  Petitioner contends that these witnesses could have testified that the clothes seized from his mother's home belonged to Benny Roebuck.  Doc. 1.

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).   The trial court rejected this claim on postconviction review because the record established that Petitioner assented to counsel's strategic decision not to call these witnesses.  Moreover, the trial court pointed out that counsel

established through his examination of a state witness that there was no forensic

evidence linking Petitioner to the clothes.  Under these facts, Petitioner has failed to

show that counsel's performance was deficient, or that there is a reasonable probability

that the outcome of the trial would have been different if these witnesses had testified.

Accordingly, the Court cannot conclude that the state court's rejection of this claim was

contrary to, or an unreasonable application of, *Strickland*, or an unreasonable

determination of the facts.

### Claim (6) Failure to Move to Sever Petitioner's Trial

Petitioner contends that counsel rendered ineffective assistance by failing to file a

motion to sever his trial from Rollins when Rollins's confession implicated Petitioner in

the robbery.  Doc. 1.  Rollins did not testify at trial.  The admission of a non-testifying

defendant's out-of-court statement implicating a co-defendant violates the co-

defendant's rights under the Confrontation Clause.  *See Bruton v. United States*, 391

U.S. 123, 135-36 (1968).  However, Officer Suleski's testimony regarding Rollins's

confession did not reference Petitioner's involvement in the crime in any way, and thus

there was no *Bruton* issue.  *See* App. Exh. C. at 113-15, 126-28.  The trial court rejected

this claim on postconviction review because Petitioner failed to establish any prejudice.

Petitioner has failed to show that the state court's rejection of this claim was contrary to,

or an unreasonable application of, *Strickland*, or an unreasonable determination of the

facts in light of the evidence adduced at trial.

### Claim (7) Failure to Bring Sleeping Juror to Court's Attention

Petitioner contends that his trial counsel rendered ineffective assistance by failing

to alert the trial court to the fact that juror Folsom was inattentive and sleeping during

critical periods of the trial.  Doc. 1.  The trial court rejected this claim following an

evidentiary hearing at which Mr. Sheffield and Folsom testified that Folsom did not sleep

during the trial.  The court specifically credited this testimony, and pointed out that the

Court also was watchful for inattentive jurors.  The trial court's factual finding that the

juror was not inattentive or sleeping is afforded a presumption of correctness, and

Petitioner has failed to point to any clear and convincing evidence that rebuts the

presumption.  *See* 28 U.S.C § 2254 (e)(1).  Under these circumstances, Petitioner is not

entitled to federal habeas relief.

### Claim (8) Counsel's Failure to Adequately Prepare for Trial

In his eighth claim, Petitioner conclusionally alleges that counsel failed to "do

anything helpful to help petitioner prepare for trial."  Petitioner alleges that counsel failed

to effectively cross-examine Jesse Harden, failed to effectively question Petitioner at trial

by inquiring of his whereabouts at the time of the robbery, failed to investigate and

present four exculpatory witnesses, failed to move to sever Petitioner's trial, failed to

investigate the ownership of the clothes and allow Petitioner to demonstrate for the jury

that they did not fit him, and failed to object to a sleeping juror.  Doc. 1.  These latter four

subclaims are repetitive of Petitioner's prior claims and to that extent do not merit further

discussion.  As to counsel's strategy regarding examination of Harden and Petitioner, as

the state court determined Petitioner has failed to establish a reasonable probability of a

different outcome had counsel engaged in different or further questioning.  Counsel

argued to the jury that Harden was not credible, *see* App. Exh. C. at 254-55.   After

eliciting Petitioner's testimony that he did not commit a home invasion robbery, counsel's

decision not to question Petitioner further regarding his whereabouts during the crime is

the type of tactical decision that does not provide a basis for an ineffective-assistance claim.   *See, e.g., United States v. Hughes*, 635 F.2d 449, 452 (5th Cir. 1981) (defense counsel's trial strategy, which would include asking or refraining to ask certain questions, does not reach constitutional proportions).  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence adduced at trial.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS**  this 16th day of August 2011.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**